**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| KESHA KAUFMAN, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C15-3129-LTS <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff, Kesha K. Kaufman, seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for Social Security disability insurance benefits (DIB) and Supplemental Security Income benefits (SSI), under Titles II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Kaufman contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, the court recommends that the Court reverse the Commissioner's decision and remand the case for further proceedings.

## *I.     BACKGROUND*

Kaufman was born in 1987, has a high school diploma, and attended special education. AR 18, 44, 262. She has no past relevant work experience. AR 21. She filed her application for disability benefits on May 25, 2012, alleging disability beginning March 1, 2010, due to mild degenerative disc disease, obesity, dysthymic disorder versus

major depressive disorder, personality disorder, and generalized anxiety disorder. AR 13. After the Commissioner denied her applications, initially and on reconsideration, Kaufman requested a hearing before an Administrative Law Judge (ALJ). AR 154, 158, 163. ALJ Eric S. Basse conducted a hearing on November 22, 2013. AR 11, 31. The ALJ issued a decision on March 11, 2014, finding that Kaufman could perform work as a sales attendant, marker, or folder, and, thus, she was not disabled. AR 22. The Appeals Council denied Kaufman's request for review on May 13, 2015. The ALJ's decision, thus, became the final decision of the Commissioner. AR 1; 20 C.F.R. §§ 404.981, 416.1481.

On July 14, 2015, Kaufman filed a complaint in this court seeking review of the Commissioner's decision. This case has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. The parties have briefed the issues, and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705,

707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner

4

will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since March 1, 2010, the alleged onset date (20 C.F.R. §§ 404.1574 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mild degenerative disc disease, obesity, dysthymic disorder versus major depressive disorder, personality disorder, and generalized anxiety disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)).

5. The claimant has the residual functional capacity to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday) as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except: she can frequently climb, balance, stoop, kneel, crouch and crawl. She can only occasionally climb ladders, ropes and scaffolds. She is limited to the performance of simple routine, repetitive tasks. There must be no requirement to read or write reports, but she can read simple instructions and understand simple instructions. She should not be required to perform math calculations.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on December 10, 1987, and was 22 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964.)

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. §§ 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2010, through the date of this decision (20 C.F.R. §§ 404.350(a)(5), 404.1520(g) and 416.920(g)).

AR 12-24.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

This Court must confirm the Commissioner's decision "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny

6

benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Kaufman raises the following arguments in contending that the ALJ's decision is not supported by substantial evidence:

(1) The ALJ's RFC assessment is flawed because he failed to properly evaluate the work-related limitations from treating physician, Dr. Maria Lozano;

(2) The ALJ failed to develop the record by ordering a consultative exam concerning Kaufman's current functioning;

(3) The ALJ failed to properly evaluate Kaufman's subjective allegations;

(4) The ALJ erred in relying on VE testimony that conflicted with the dictionary.

*Dr. Lozano's Treating Medical Opinion Concerning Work-Related Limitations Deserves Controlling Weight; The ALJ's RFC Assessment is Thus Flawed; The Case Must Be Remanded*

Social Security regulations and case law outline the framework for evaluation of opinions from a treating medical source. The treating physician's continuing relationship with the claimant makes her especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015); see *Hancock v. Secretary of the Dep't of HEW*, 603 F.2d 739, 740 (8th Cir. 1979); SSR 96-5p.

To be a "treating" source, a doctor must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. Dr. Maria Lozano first saw the claimant in August, 2012. AR 548. The record includes reports from approximately ten office visits of Kaufman with Dr. Lozano for a period of a little over a year. Dr. Lozano, then, was the claimant's treating physician.

Dr. Lozano saw Kaufman regularly and monitored her depression medication. Dr. Lozano was familiar with Kaufman's therapy. She recommended that Kaufman continue her therapy sessions with Dr. Porter. Dr. Lozano was in a good position to evaluate Kaufman's limitations related to her mental health. Dr. Lozano determined that claimant would be severely limited in a number of areas, and unable to remember work-like procedures, sustain an ordinary routine, make simple work-related decisions, complete a normal workday/workweek without interruptions from psychologically-based symptoms, or deal with normal work stress. AR 1241-1242.

The ALJ, however, determined Kaufman retained capacity to perform light work but was limited to the performance of simple routine, repetitive tasks, with no requirement to read or write reports, and she should not be required to perform math calculations. He determined she could read simple instructions and understand simple instructions. This is in direct conflict of Dr. Lozano's opinion that Kaufman would not be able to remember work-like procedures or follow an ordinary work routine.

The ALJ relied on what he perceived to be Kaufman's ability to function day to day. He determined she only had slight limitation in her ability to perform activities of daily living, despite Dr. Lozano's opinion and treating notes, and the numerous notes from Dr. Porter regarding Kaufman's difficulty functioning day to day with her depression. The ALJ ignored this and determined she can perform unskilled working activity, except for limitations with reading, writing, and math.

Kaufman's attorney asked the Vocational Expert a hypothetical including Dr. Lozano's limitations: unable to remember work like procedures, sustain an ordinary routine without special supervision, make simple work related decisions, unable to complete a normal work day without interruption from psychological[ly] based symptoms. The Vocational Expert testified that an individual with these issues would be unable to work on a competitive, full-time basis. AR 62-63.

9

The ALJ must determine whether a treating opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record when evaluating a treating physician's opinion as to the nature and severity of a claim of disability. If so, the ALJ must give it "controlling weight." 20 C.F.R. § 404.1527(c)(2); *see Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015); *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). The record must be evaluated as a whole to determine whether the treating physician's opinion should control. *Tilley v. Astrue*, 580 F.3d 675, 679-80; *Reed*, 399 F.3d at 920.

There are two types of "objective" medical evidence: "signs" and "laboratory findings." 20 C.F.R. § 404.1512(b)(1) (2013) (defining "[o]bjective medical evidence" as "signs" and "laboratory findings"). "Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from [a claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b) (2013). "Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528(c) (2013). Dr. Lozano's report reflects a process that considered Kaufman's complaints and processed those complaints in light of Dr. Lozano's education and training as a clinical psychologist. Although Dr. Lozano's psychological evaluation is not supported by x-rays and blood tests, it is supported by objective medical evidence, including signs.

As the Eighth Circuit has recognized, a claimant's allegations are an important starting point in diagnosis and treatment. See *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) ("A patient's report of complaints, or history, is an essential diagnostic tool"); *Brand v. Secretary of HEW*, 623 F.2d 523, 526 (8th Cir. 1980) ("[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints"); *Clester v. Apfel*, 70 F. Supp. 2d 985, 990 (S.D. Iowa 1999); *Frazier ex rel. McDonald v. Astrue*, No. 3:06-cv-03033-PAZ, 2007 WL 2904081, at *6 (N.D. Iowa Sept. 28, 2007). Here,

Dr. Lozano listened to Kaufman's complaints to diagnose her condition, as well as to determine whether to make changes to her medication, or whether the treatment or medication was working. Dr. Lozano's treatment notes indicate her use of signs and her medical experience to make these decisions on Kaufman's treatment. This objective medical evidence supports Dr. Lozano's opinion.

Dr. Lozano's treating expert medical opinion is on balance, the same as, and is supported by, the expert medical opinion of Dr. Porter. Dr. Porter was Kaufman's psychotherapist. Dr. Lozano consulted with Dr. Porter about how best to treat Kaufman, and there are references in the record that Dr. Lozano was aware of Kaufman's issues and limitations from her therapy sessions. Dr. Porter reached out to Dr. Lozano as well for consultation on Kaufman's condition. AR 626. Dr. Lozano's notes indicate she was aware of the progress Kaufman was making with Dr. Porter. AR 638.

Even the Agency's consultative examination supports Dr. Lozano's opinion. In October 2011, Kaufman had a consultative examination with Timi Jordison, Ph.D., who also believed Kaufman may have some borderline intellectual functioning. AR 498. Kaufman would have difficulty remembering and understanding instructions, procedures and locations, and might need things repeated until she was able to do the task. AR 498. Her pace would be slow, and could possibly have difficulties interacting with co-workers and the public. AR 498. This also supports Dr. Lozano's opinion that Kaufman would have difficulties doing tasks and being unable to sustain work like activities.

Given all this, it is clear that Dr. Lozano's opinions are well-supported by the medical evidence in the record. Even the state's consultative examination supports Dr. Lozano's findings and limitations. The ALJ should have given Dr. Lozano's opinion controlling weight.

An ALJ must give a treating source's opinion controlling weight when it is supported by acceptable clinical and laboratory diagnostic techniques and where it is "not inconsistent" with other substantial evidence in the record. *Casey v. Astrue*, 503 F.3d

687, 692 (8th Cir. 2007); *Wagner v. Astrue*, 499 F.3d 842, 850 (8th Cir. 2007); 20 C.F.R. § 404.1527(c)(2). SSR 96-2p provides some clarity:

> [Not inconsistent] is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all the other evidence (i.e., it does not have to be consistent with all other evidence) as long as there is no other substantial evidence in the record that contradicts or conflicts with the opinion.

SSR 96-2p. The "not inconsistent" standard presumes that the treating physician's opinion is predominant and requires the ALJ to search the record for inconsistent evidence in order to give the treating source's opinion less than controlling weight. Under the "consistent" standard, the opinion has controlling weight only if the record supports it. *Ynocencio v. Barnhart*, 300 F. Supp. 2d 646, 657 (N.D. Ill. 2004); *Samuel v. Barnhart*, 207 F. Supp. 2d 870, 885 (E.D. Wis. 2002); *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1100 (E.D. Wis. 2001).

The ALJ tried to discount Dr. Lozano's opinion based on perceived inconsistencies. However, the inconsistencies pointed out by the ALJ are mischaracterized or not really inconsistent with the record as a whole.

The ALJ discounted Dr. Lozano's opinion that Kaufman is unable to remember work-like procedures, sustain an ordinary routine, make simple work-related decisions, complete a normal workday/workweek without interruptions from psychologically-based symptoms, or deal with normal work stress. The ALJ found this to be inconsistent with the fact that Kaufman was able to work at nearly SGA levels during her pregnancy and that there was no documented psychiatric decompensation since the time she was working. Kaufman's last work was in early 2011, before her child was born in February of that year. It was not until mid-2012 that Kaufman's depression became such an issue that she began receiving treatment for it. In June, 2012, she complained to her family doctor that her depression was worse, which sparked the referral to therapy. AR 507. Kaufman was not on any anti-depression medication until June, 2012. AR 507. Even

after on medication, Kaufman had periods where her depression worsened and she was not bathing regularly and had thoughts of suicide. AR 621. This history is not substantially inconsistent with Dr. Lozano's opinion.

The ALJ also states that Kaufman had GAF scores of 50 to 60, which showed she only had moderate impairment. AR 19. The ALJ failed to note that Kaufman also had a GAF score of only 40 to 45 on a visit on August 2013, shortly before Dr. Lozano completed her treating source statement. AR 649. Dr. Lozano opined, and the record supports, that there was some worsening or decompensation of Kaufman's mental health after she stopped working in 2011. AR 643-671.

There is only one record that could possibly conflict with Dr. Lozano's opinions, and that is the evaluation by Brent Seaton, Ph.D. Dr. Seaton was to assess Kaufman's intellectual capacity, but instead he administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). AR 1257. The results of the test suggested that claimant may be prone to magnify illness. AR 1258. Because of this, he recommended his interpretation be considered with some caution. *Id*. Despite this, Dr. Seaton's diagnosis was the same as Dr. Lozano's – that Kaufman had major depressive disorder and that she should continue psychotherapy and psychiatric care. AR 1259. This is ambiguous and not sufficient evidence to deny the treating psychiatrist's opinion controlling weight.

The medical evidence in the record overwhelmingly, if not entirely, supports Dr. Lozano's opinions on Kaufman's limitations. The other evidence is not inconsistent with Dr. Lozano's reports, and the only arguably inconsistent item—Dr. Seaton's suggestion of possible magnifying of symptoms—is suspect given Kaufman's possible limited intellectual capabilities. Dr. Lozano's work-related limitations are entitled to controlling weight here.

Because the ALJ failed to give the treating expert medical opinion of Dr. Lozano its proper controlling weight, I recommend the Court remand this case for further

proceedings at the Agency consistent with this Order. There is no need to examine plaintiff's further claims of error in this regard.

## VI. CONCLUSION

For the reasons set forth herein, the court RESPECTFULLY RECOMMENDS that the Commissioner's determination that Kaufman was not disabled be **reversed and remanded** for further proceedings in which the expert treating medical opinion of Dr. Lozano is given controlling weight, and that judgment here be entered against the Commissioner and in favor of Kaufman.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 13th day of May, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa